## Case No. 25-248

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———————————

ERIC JAMES BAGNALL,
Individually and as Administrator of the Estate of Camren McKay Bagnall,
*Plaintiff-Appellant,*

v.

CALIFORNIA STATE UNIVERSITY MARITIME ACADEMY;
VINEETA DHILLON; LILLIAN GREGG;
BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY,
*Defendants-Appellees.*

_____

*On Appeal from the United States District Court for the Eastern District of California (Sacramento),*
*Case No. 2:23-cv-01606-KJM-CKD • The Honorable Kimberly J. Mueller, District Judge*

## APPELLANT'S OPENING BRIEF

MARK N. FRANKLIN
**LENTO LAW GROUP**
4444 Geary Blvd., Suite 215
San Francisco, CA 94118
Telephone: (415) 523-8700
mnfranklin@lentolawgroup.com

LAWRENCE A. KATZ
**LENTO LAW GROUP**
1814 Route 70, Suite 321
Cherry Hill, NJ 08003
Telephone: (856) 652-2000
lakatz@lentolawgroup.com

*Attorneys for Plaintiff-Appellant Eric James Bagnall,*
*Individually and as Administrator of the Estate of Camren McKay Bagnall*

 COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER 

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

JURISDICTION...............................................................................2

ISSUE PRESENTED .......................................................................3

STATEMENT OF THE CASE .........................................................4

      Procedural History ....................................................................5

      The District Court Decision......................................................6

SUMMARY OF ARGUMENT ........................................................9

ARGUMENT ................................................................................10

      Standard of Review.................................................................10

      Rule 15 Amendment of a Complaint ......................................11

      The District Court Abused Its Discretion And Its Decision Should Be
Reversed..................................................................................11

CONCLUSION..............................................................................17

CERTIFICATE OF COMPLIANCE...............................................18

i

## <u>TABLE OF AUTHORITIES</u>

**CASES** **Page(s)**

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990)..................................................................10

*Johnson v. Mammoth Recreations*,
  975 F.2d 604 (9th Cir. 1992)....................................................................11

*Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017)....................................................................16

*Puckett v. Baraona*,
  No. 1:23-cv-00054-HBK (PC), 2024 U.S. Dist. LEXIS 218888
  (E.D. Cal. Dec. 3, 2024) ..........................................................................11

*Taylor v. Hiromichi Kobayashi*,
  No. 22-16017, 2023 U.S. App. LEXIS 5518 (9th Cir. Mar. 8, 2023) .....10, 11

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011)....................................................................10

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016)..................................................................10

**STATUTES**

20 U.S.C. § 1681...................................................................................1, 2

28 U.S.C. § 1291.......................................................................................3

28 U.S.C. § 1331.......................................................................................2

28 U.S.C. § 1367.......................................................................................2

42 U.S.C. § 1983..............................................................................*passim*

**RULES**

Fed. R. Civ. P. 12.................................................................................9, 17

Fed. R. Civ. P. 15.................................................................................9, 11

# **INTRODUCTION**

This lawsuit alleged that the Appellant/Plaintiff's son and decedent, Carmen Bagnell (Decedent), committed suicide due to the humiliation, bullying, and rumors against him resulting from the California State University Maritime (CSU) violation of Title IX of the Education Amendments of 1972 (20 U.S. Code § 1681 et al.). More specifically, the personal horrors encountered by Decedent commenced with Lillian Gregg's filing of a false Title IX complaint against him, alleging claims of sexual misconduct and sexual assault, followed by a wrongful and woefully deficient Title IX investigation by CSU, and finally, the unjust presumption of Decedent's guilt by CSU's agent, its Title IX Coordinator. (ER-28-84)

On December 9, 2024, after a series of motions and amended complaints, the District Court dismissed Plaintiff's Third Amended Complaint (ER-5-11) and denied Plaintiff's Motion to file a Fourth Amended Complaint. (ER-5-11) The proposed Fourth Amended Complaint sought to enhance the Title IX averments and add new § 1983 claims. The District Court held that permitting the new § 1983 claims was prejudicial to the Defendants and would unduly delay the case. It held that permitting the additional Title IX averments would be futile as they would not correct the Title IX deficiencies.

The District Court improperly denied the filing of a Fourth Amended Complaint as it related to the additional Title IX claims. (Plaintiff does not challenge

1

the refusal to permit the addition of the § 1983 claims.)  The District Court abused its discretion holding that an amendment would be futile because Plaintiff could not plead an atmosphere of bias against the Decedent or evidence of a one-sided investigation.  On the contrary, the proposed new averments to be included in a Fourth Amended Complaint would have provided those very facts and inferences, permitting the jury to conclude that the Decedent's Title IX protections were ignored because, *inter alia*, CSU provided ineffective evaluation of cases, significant delays in completing investigations, an insufficient Title IX infrastructure, and CSU was not invested in its Title IX DHR programs.  (ER-14)

Had the District Court followed the guidance and commands of this Court, a limited amended complaint would have been permitted.  Therefore, the District Court's failure to allow the filing of a Fourth Amended Complaint warrants reversal of its decision and reinstatement of the lawsuit.

## **JURISDICTION**

The District Court had subject-matter jurisdiction of this lawsuit by virtue of 28 U.S.C. § 1331 and 20 U.S. Code § 1681 et al., as this lawsuit raises a federal question from an alleged violation of Plaintiff's Decedent's rights under Title IX of the Education Amendments of 1972.  The District Court also had supplemental jurisdiction over related state claims pursuant to 28 U.S.C. § 1367.

2

This Honorable Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 - Final decisions of district courts. This is an appeal from a final order or judgment that disposes of all parties' claims that was entered on December 9, 2024. (ER-4, 5-11)

A timely Notice of Appeal was filed on January 7, 2025. (ER-232-42)

## **ISSUE PRESENTED**

In this case, the District Court held that the Third Amended Complaint failed to contain factual averments that Defendants had an atmosphere of bias against the Decedent or evidence of a one-sided Title IX investigation. Plaintiff sought to correct this alleged deficiency by filing a Fourth Amended Complaint which would plead several new facts based on an analysis of the Defendants' Title IX policies and atmosphere contained in a Report of an investigation commissioned by the Defendants themselves. However, despite the damning self-commissioned Report, the District Court held that filing a Fourth Amended Complaint would be futile as the additional averments would not overcome a Rule 12 Motion to Dismiss. The District Court ignored the liberal Rule 15 amendment standard and that, had a limited Fourth Amended Complaint been permitted, the additional averments would have to be interpreted in the light most favorable to the plaintiff. Thus, this Court must determine whether the District Court's myopic evaluation of the proposed Fourth Amended Complaint constitutes a reversible abuse of discretion.

3

<u>SUGGESTED RESPONSE</u>: The District Court decision should be reversed because the failure to grant leave to file a Fourth Amended Complaint, on the basis of futility, was an abuse of its discretion.

## **STATEMENT OF THE CASE**

This lawsuit arises from the false accusation of sexual misconduct against Decedent, CSU's subsequent misapplication of Title IX , and the improper handling of the investigation by CSU, CSU Board of Trustees, and the Title IX investigator, which led to Decedent's untimely death by suicide on February 8, 2021.

In September 2020, a Title IX complaint was filed against Decedent by non-party Lillian Gregg concerning events that took place on August 16, 2020, when Decedent and Ms. Gregg were watching a movie in her dormitory room at her invitation. Decedent provided statements to the Cal Maritime Police, demonstrating that the encounter was consensual. Additionally, Decedent submitted text messages from Ms. Gregg on the same night corroborating that the encounter was consensual. Cal Maritime Police investigated the complaint and cleared Decedent's name, finding no substantiation for Ms. Gregg's allegations. Despite this, Cal Maritime failed to properly exonerate Decedent and failed to prevent the subsequent harassment and bullying he endured as a result of the accusations, which contributed to his tragic suicide at the age of 19 years. (ER-28, 31-34, 51-62)

4

**Procedural History**

On February 8, 2023, Plaintiff initially filed this action in the United States District Court for the District of Connecticut. (ER-169-231) However, on July 24, 2023, the District of Connecticut granted a Motion to Transfer Venue, finding that the Eastern District of California was the proper jurisdiction. (ER-245) The case was officially transferred on August 4, 2023. (ER-245)

Once the case was transferred, both Plaintiff and Defendants experienced changes in counsel, resulting in the usual delays in transferred proceedings. However, these delays were neither undue nor in bad faith. The Defendants entered a notice of change in counsel on August 21, 2023. (ER-246-47)

Plaintiff filed a Third Amended Complaint on March 2, 2024. Defendants again moved to dismiss on March 16, 2024. (ER-250)

Before seeking leave to file a Fourth Amended Complaint, Plaintiff and his legal team discovered newly located reports from the Cozen and O'Connor Institutional Response Group detailing audits of the California State University's Title IX system, including Defendant CSUs Title IX procedures. These reports revealed systemic neglect, harassment, and abuse of the Title IX process, reinforcing Plaintiff's claims. These reports contained alarming information about the system which enabled harassment, bullying, and wrongful claims against the Decedent to continue, and showed a much larger trend of neglect, and abuse of the Title IX

5

mandate on part of CSU. Based on this newly located information, further amendment of the complaint became necessary to include new claims based on this information. (ER-12-16)

On July 31, 2024, the District Court directed the parties to file a joint status report concerning whether further amendment of the complaint would be futile. (ER-251) On October 29, 2024, the Court ordered Plaintiff to file a supplemental brief on the issue which Plaintiff submitted on November 13, 2024. (ER-251, 252, 12-16) Defendants filed their own supplemental brief on November 26, 2024, arguing against a Fourth Amended Complaint but failing to raise any claims of prejudice or bad faith, etc.. (ER-252)

On December 9, 2024, the District Court issued the order under review, dismissing Plaintiff's claims. (ER-5-11) Judgment was entered the same day. (ER-4) Plaintiff timely filed a Notice of Appeal on January 7, 2025. (ER-232-42)

**The District Court Decision**

The District Court dismissed the Third Amended Complaint. (ER-11) It properly dismissed the supplementary state court claims for failure to meet state notice requirements. (ER-11) The District Court also dismissed the Title IX claims because, as Plaintiff's trial counsel conceded, the Third Amended Complaint did not contain sufficient facts to present a background indicia of sexual harassment and its relationship in Decedent's matter. (ER-11)

However, Plaintiff sought to correct these deficiencies by seeking leave to file a Fourth Amended Complaint. The proposed Fourth Amendment included (1) an enhanced and revised Title IX claim, and (2) several new (essentially § 1983) federal claims. (ER-12-16)

The District Court erred and abused its discretion by prohibiting *any* amended complaint from being filed. The District Court found that Plaintiff's attempt to amend one more time was not done in bad faith. However, it concluded that the addition of the new claims (i.e., the new § 1983 claims) would cause undue delay and prejudice. (ER-9-10)

Plaintiff sought to amend the Title IX claim to include the following additional information as explained in his Supplemental Brief (ER-13-15):

> Plaintiffs intend to rehabilitate Count VII by **adding allegations of background indicia of sex discrimination and tying them to the specifics of this case, based on new information**. * * * Plaintiffs discovered this new information * * * reviewing newly located reports of recent audits by the Institutional Response Group that examined California State University's Title IX system, including analysis of Defendant CALIFORNIA STATE UNIVERSITY MARITIME's ("CSU Maritime") Title IX procedures. The system-wide report about all the California State University ("CSU") campuses, attached here as **Exhibit A**, concluded the following about the Title IX infrastructure of the entire CSU system:
>
>> [W]e observed and heard concerns about a **lack of response or delays in responsiveness to reports** and other communications; **significant delays in completing investigations**, with many investigations spanning more than a year; **ineffective evaluation of cases** upon intake and triage; **ineffective escalation of issues** for collaboration and application of proactive campus efforts; an

7

**inability to identify, track or monitor patterns**; and, insufficient time and resources to devote to university wide prevention, education, and proactive, strategic work to drive culture change and growth because of the focus on individual cases. In short, **the staffing gaps hinder campus professionals' ability to consistently demonstrate care and implement core functions**. This further **hinders effectiveness, and diminishes trust in the system, university, office, and administrators, which has the effect of increasing barriers to reporting and disengagement with process**. **Exhibit A,** p. 80 (emphasis added).

Likewise, the Institutional Response Group report about Defendant CSU Maritime in particular, attached here as **Exhibit B**, concluded the following:

As supported by the evidence base outlined in this report, our core findings and recommendations are as follows:

**Insufficient Infrastructure, Visibility, and Trust Gap:** During the period of our review, and until June 5, 2023, Cal Maritime **did not have an on-campus Title IX Office** and the interim Title IX Coordinator worked remotely. The DHR Office was separately housed in Human Resources and the DHR Administrator was also the Assistant Vice President of Human Resources. During our listening sessions with the community, **we learned of the community's perception that Cal Maritime is not invested in its Title IX and DHR programs. Underlying reasons for this opinion included negative perceptions of prior Title IX personnel (prior to December 2021) and concerns about pervasive discrimination and harassment on campus that were deeply impacting the community**.

**Exhibit B**, p. 4.

Notably, the California Legislature considered these reports to be reliable and concerning enough to pass laws implementing their recommendations. *See, e.g.,* Cal. Ed. Code § 66294 and Cal. Ed. Code § 67385.7. These failures to timely process Title IX matters prove that

the sex discrimination Plaintiffs' Decedent experienced was not a fluke,
but part of a larger pattern of discrimination. (bolding added)

(ER-13-15)

Ignoring the significance of this information and the problems it highlighted
with the CSU Title IX process, the District Court erroneously held that permitting a
Fourth Amended Complaint would be futile as these additional facts do not provide
support for a Title IX violation.   (ER-10-11)

## **SUMMARY OF ARGUMENT**

This Court and F.R.C.P. 15 recognize that amendments to complaints are to
be liberally granted.  Further, when a Rule 12 challenge is made to a complaint, it is
black-letter law that the facts and inferences in the complaint must be viewed in the
light most favorable to the plaintiff, the non-moving party.

In this case, the District Court found that a Third Amended Complaint was
inadequate because it did not contain sufficient facts that the Defendants' conduct
toward the Decedent resulted from general pressures against the university to pursue
Title IX investigations, trends of disciplinary proceedings being consistently decided
against male respondents, or any other similar patterns or practice of sex
discrimination." (ER-11)

Plaintiff argued that pleading the facts determined by the Defendants' self-
commissioned investigation and report of their Title IX atmosphere would correct
the alleged deficiencies with the Third Amended Complaint.  However, the District

9

Court denied Plaintiff leave to file a Fourth Amended Complaint, stating that such an amendment would be futile. Such a conclusion ignored that the Defendants' self-commissioned Title IX Report, when viewed in the light most favorable to the plaintiff, would correct the alleged deficiencies with the Third Amended Complaint. The conclusion also ignored the District Court's obligation to permit liberal amendment of the complaint. The District Court's failure to apply the proper standards when denying the plaintiff leave to file a Fourth Amended Complaint constitutes a reversible error.

## **ARGUMENT**

### **Standard of Review**

This Court has held, "Although "[t]he standard for granting leave to amend is generous,' *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011), 'leave to amend is not to be granted automatically,' *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). 'We review the denial of leave to amend for an abuse of discretion, but we review the question of futility of amendment de novo.' *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016) (cleaned up). 'Under a futility analysis, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" *Corinthian Colls.*, 655 F.3d at 995 (cleaned up)." *Taylor*

*v. Hiromichi Kobayashi*, No. 22-16017, 2023 U.S. App. LEXIS 5518, at *4 (9th Cir. Mar. 8, 2023).

## Rule 15 Amendment of a Complaint

F.R.C.P. 15 provides that "The court should freely give leave when justice so requires." *Puckett v. Baraona*, No. 1:23-cv-00054-HBK (PC), 2024 U.S. Dist. LEXIS 218888, at *3 (E.D. Cal. Dec. 3, 2024). "Rule 15(a)'s liberal amendment policy . . . focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). Thus, in the absence of bad **faith and prejudice to the other party, the motion to amend should be granted**.

## The District Court Abused Its Discretion And Its Decision Should Be Reversed

In this case, the District Court specifically found there was no bad faith. (ER-9)

As for prejudice, this Court needs to examine the different amendments sought. Plaintiff sought to plead several new § 1983 due process and equal protection claims. The District Court held that those new claims were a "significant departure from the initial complaint" and that introducing such claims for the first time was not only unduly prejudicial to the Defendants, but that it would cause undue delay in this case. (ER-9-10)

11

Plaintiff does not seek a review of the District Court's refusal to permit an amended complaint to add the § 1983 due process and equal protection claims.

However, Plaintiff vigorously challenges the District Court's refusal to permit him to amend the Title IX claims. *The District Court could have, and should have, permitted the amendments relevant to Title IX. It could have done so while denying any amendment relative to the § 1983 claims.* This would have permitted the Title IX case to proceed without causing the alleged prejudice and delay related to the § 1983 claims.

There was absolutely no prejudice to Defendants by permitting Plaintiff to amend his Title IX claims. There was no surprise. Title IX has been at the heart of this lawsuit since it was originally filed. The additional proposed amendments also focused on the events surrounding the Title IX claims against Decedent and the University's responses to the claims. The documents referred to in the Plaintiff's Supplemental Brief, and which would have formed the basis for strengthening the factual averments in the complaint, were The Institutional Response Group analysis of CSU. These documents also could not surprise or prejudice the Defendants because "in 2022 and 2023 the *CSU engaged Cozen O'Connor's Institutional Response Group to conduct a systemwide assessment of its Title IX and Discrimination, Harassment and Retaliation (DHR) programs*. This included interviews and campus visits, in addition to gathering feedback through surveys and

a dedicated email. Their systemwide and university reports identify core observations and recommendations for improvements at both the system and university levels." (emphasis added)[1]  In other words, the new facts and information that Plaintiff intended to plead were found in CSU's *self-commissioned* report.

The District Court recognized, "Evaluating plaintiff's proposed rehabilitation of his Title IX claim against CSU, the court bears in mind he "must plead that: (1) the defendant educational institution receives federal funding; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity, and (3) the latter occurred on the basis of sex."  (ER-10)

Critically, these fundamental statements had already been pled in the Third Amended Complaint and would have been repeated in a Fourth Amended Complaint.  (See, ¶ 129: "Cal Maritime is an educational institution  that receives federal funds," ¶ 122:  "As a result of this gender-based discrimination which the Decedent was subjected to throughout the Title IX process, and as perpetrated by Defendant Dhillon, the Decedent felt that his side of the story was neither being heard nor considered, and that his guilt was prejudged by Dhillon based solely on

---

[1]https://www.calstate.edu/csu-system/administration/systemwide-human-resources/civil-rights/Pages/cozen-title-ix-assessment.aspx:~:text=In%202022%20and%202023%20the,surveys%20and%20a%20dedicated%20email.

the fact that he was male." and ¶ 64: "As a result of this gender-based discrimination which the Decedent was subjected to throughout the Title IX process, and as perpetrated by [CSU agent and employee] Defendant Dhillon, the Decedent felt that his side of the story was neither being heard nor considered, and that his guilt was prejudged by Dhillon based solely on the fact that he was male." (ER-35, 44, 45)

Based on the above, the baseline prima facie elements of a Title IX claim were already pled in the Third Amended Complaint. However, the District Court held those facts were insufficient. Therefore, leave was sought to file a Fourth Amended Complaint. (ER-12-16)

The District Court ruled that an amendment was futile because "plaintiff's Title IX claim failed because it included no allegations of the sort the court discussed in Schwake, such as general pressures against the university to pursue Title IX investigations, trends of disciplinary proceedings being consistently decided against male respondents or any other similar patterns or practice of sex discrimination." However, the District Court ignored the fact that the CSU commissioned Cozen and O'Connor's investigation Report would provide the facts that the District Court deemed necessary for the Title IX claim to proceed. The Cozen and O'Connor Report found:

- a lack of response or delays in responsiveness to report sexual assault allegations

- ineffective evaluation of cases

- significant delays in completing investigations

- Insufficient infrastructure

- Cal Maritime is not invested in its Title IX and DHR programs

When the attitude of CSU and its employees and agents,[2] is combined with the conclusions of the CSU Cozen and O'Connor Report that there was ineffective evaluation of cases, significant delays in completing investigations, insufficient Title IX infrastructure, and Cal Maritime not being invested in its Title IX DHR programs, what becomes clear is that Decedent was denied his Title IX rights because the CSU Title IX investigator prejudged him as guilty because he was male and CSU simply did not care enough about Title IX to protect Decedent. The Cozen and O'Connor Report explained why CSU did not challenge the Title IX investigator's (Dhillon) position, why CSU did not prevent the Decedent from being the subject of this crusade against him, and the resulting humiliation resulting in his suicidal death. However, Plaintiff was denied leave to plead these additional facts in a Fourth Amended Complaint.

---

[2] Third Amended Complaint ¶ 64: "As a result of this gender-based discrimination which the Decedent was subjected to throughout the Title IX process, and as perpetrated by [CSU agent and employee] Defendant Dhillon, the Decedent felt that his side of the story was neither being heard nor considered, and that his guilt was prejudged by Dhillon based solely on the fact that he was male." (ER-35)

Significantly, when deciding a Rule 12 Motion to Dismiss, both the district and "appellate court accepts the plaintiff's allegations as true and views them in the light most favorable to [him or] her." *Park v. Thompson*, 851 F.3d 910, 914 (9th Cir. 2017).

Had the District Court liberally reviewed the language of the proposed Fourth Amended Compliant and the additional allegations based on the Cozen and O'Connor Report, it would have concluded that Plaintiff should have been given leave to file a Fourth Amended Complaint that would have presented a prima facie case against the University Defendants for violations of Title IX. This is because had the Fourth Amended Complaint been permitted, the Cozen and O'Connor Report would have been interpreted in the light most favorable to the Plaintiff, *Park*, *supra*, providing the factual averments the District Court found lacking in the Third Amended Complaint.

The District Court's myopic evaluation of what the Plaintiff could have pled had a Fourth Amended Complaint been permitted, i.e., the prima facie facts already contained in the Third Amended Complaint with the addition of the findings of the Cozen and O'Connor Report, ignored its obligation to permit liberal amendments whose averments would be interpreted in the light most favorable to the Plaintiff, the Rule 12 non-moving party. Contrary to the District Court's conclusion, a Fourth

16

Amended Complaint that incorporated the Cozen and O'Connor Report would not have been futile, but would have withstood a Motion to Dismiss.

## **CONCLUSION**

A Fourth Amended Complaint, which combined the averments in the Third Amended Complaint, fortified by the facts determined by the Cozen and O'Connor Report, would not have been futile. Such a Fourth Amended Complaint, when viewed in the light most favorable to the plaintiff, would have overcome a Rule 12 challenge. However, the District Court ignored its obligation to liberally permit amendments of complaints. In doing so, it abused its discretion.

For these reasons, and the others set forth above, the District Court should be reversed.

Dated: March 26, 2025

Respectfully submitted,

THE LENTO LAW GROUP, PC

/s/ Lawrence A. Katz
LAWRENCE A. KATZ[*]
Counsel for Appellant

---

[*] Primary counsel in the Court of Appeals.

17

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-248

I am the attorney or self-represented party.

**This brief contains** | 3,738 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Lawrence A. Katz | **Date** | March 26, 2025

*(use* "s/[typed name]" *to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                     18                     *Rev. 12/01/22*